Filed 2/24/14  P. v. Walker CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MAURICE WALKER,<br><br>        Defendant and Appellant. | B245405<br><br>(Los Angeles County<br>Super. Ct. No. BA398731) |

THE COURT:[*]

Defendant Maurice Walker appeals following his conviction by jury of assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1)[1] (count 1); battery in violation of section 242 (count 2); and elder abuse in violation of section 368, subdivision (b)(1) (count 3).  In counts 1 and 3, the jury found that defendant personally inflicted great bodily injury on the victim pursuant to section 12022.7, subdivision (a).  In count 1, the jury found that the victim was 70 years of age or older.  In count 3, the jury found that defendant personally used a deadly weapon pursuant to

---

[*]        BOREN, P.J., ASHMANN-GERST, J., FERNS.†

†        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]        All further references to statutes are to the Penal Code unless stated otherwise.

section 12022, subdivision (b)(1). Defendant waived a jury trial on the prior conviction allegations, and the trial court found that defendant suffered two prior strike convictions, one prior conviction for a serious felony, and three prior prison terms.

After striking one of defendant's prior strike convictions, the trial court sentenced defendant to a total term of 20 years. In count 1, the court imposed the high term of four years, doubled to eight years because of one prior strike conviction, plus five years for the enhancement for great bodily injury of an elder over 70 and five years for the prior serious felony conviction. The court imposed one year each for two of defendant's prison priors, for a sentence of 20 years in count 1. In count 2, the trial court imposed a concurrent term of six months in county jail. In count 3, the trial court imposed the same sentence as in count 1, but stayed the sentence pursuant to section 654.[2]

We appointed counsel to represent defendant on this appeal. After examination of the record, counsel filed an "Opening Brief" in which no issues were raised. On October 17, 2013, we advised defendant that he had 30 days within which to personally submit any contentions or issues that he wished us to consider. On November 18, 2013, defendant filed a supplemental brief asserting various issues.

The record shows that on June 12, 2012, Sylvester Williams, age 77, returned to his apartment building in his wheelchair and saw defendant standing outside. Defendant told Williams, "Tell your woman come down. I'm going to beat her ass." Williams lived with Tina Johnson, who was his girlfriend and caretaker. Defendant also told Williams

---

[2]     The record contains a March 21, 2013 letter from appellate counsel to the superior court requesting correction of errors in the abstract of judgment. The letter requests the following: (1) in section 2, pursuant to section 12022.7, subdivision (h), removal of the stayed enhancement in counts 1 and 3 under section 12022.7, subdivision (a), since the greater enhancement under section 12022.7, subdivision (a) was imposed in both counts; (2) in section 3, removal of the stayed section 667.5, subdivision (a)(1) enhancement in count 3, since the enhancement was imposed in count 1 and may be imposed only once; (3) in section 3, removal of the stayed enhancements for prior prison terms under section 667.5, subdivision (b), since prison prior enhancements must be either stricken or imposed. We presume the superior court will amend the abstract and forward a corrected copy to the Department of Corrections and Rehabilitation.

he had had sex four times with Johnson. Williams went to his apartment and told Johnson what defendant had said. Johnson went downstairs and spoke with defendant, who asked her why she did not answer her phone. When Johnson tried to explain, defendant hit her in the mouth with his elbow. He loosened one of her teeth. A photograph of her injured lip was shown to the jury.

Williams returned to the street in his wheelchair approximately 15 minutes after Johnson left. He was carrying his fishing cane that he used to chase away dogs from his wheelchair. It was hollow and half an inch in diameter. Defendant was in front of the building, and Williams told defendant to leave Johnson alone. Defendant said he was going to beat her ass and beat Williams's ass, too. Defendant pulled a knife with a three-inch blade from his pocket and approached Williams. Williams hit defendant on the hand with his fishing cane, breaking the cane. Williams then stood and grabbed defendant by the shoulder. Defendant swung the knife toward Williams about four times and cut him through his jacket. Williams was stabbed four times on the outside of the upper portion of his left arm. Williams still felt occasional tingling in the area where he was stabbed. Williams denied striking the first blow by hitting defendant three times on the head with his cane.

Williams saw Sammie Earl Lipsey on the other side of the street, observing the confrontation. Lipsey, who was in custody at the time of trial, testified that he heard defendant and Williams arguing. Williams was sitting in his chair when he leaped out of it with a cane in his hand. Williams swung the cane down on defendant. Defendant had his hands in front of his face and the cane hit him just above the left wrist three times. The cane broke. Lipsey left when the police came.

Defendant did not testify. In closing argument, defense counsel conceded that defendant was guilty of battery on Johnson. With respect to the attack on Williams, counsel argued that the prosecution witnesses were biased and Lipsey was not. Defendant acted in self-defense.

During the trial on defendant's prior convictions, the court heard testimony from a fingerprint identification expert who compared the prints she took from defendant to

3

those in the documentation from the California Department of Justice and found them to be the same. A paralegal for the district attorney's office testified regarding certified documents he received from the California Department of Corrections showing defendant's criminal history.

At the sentencing hearing, the defense filed a *Romero*[3] motion and a sentencing motion, and sentencing was continued to allow the People to file a response. Defendant made a *Marsden* motion.[4] After a hearing, the motion was denied.

In his supplemental brief, defendant argues the following issues:[5] (1) he was not allowed to testify at the trial on his prior convictions to explain to a jury why the strike prior did not belong to him; (2) the trial court imposed the high term, but only a jury may request the high term; therefore, he should have been given the middle term; (3) the trial court imposed a strike prior after the commission of the verdict in the instant case, when only admissions made by a defendant before the acceptance of the defendant's verdict in the earlier prosecution may be relied upon in determining if the prior conviction qualifies as a strike; and (4) his trial counsel was ineffective in not showing his booking photograph that showed his eye injury, which would have established self-defense and led the jury to a different conclusion.

## I. Court Trial on the Prior Convictions

Defendant contends that he did not get to testify under oath to a jury to explain why the strike prior did not belong to him. The record shows that, after the jury retired to deliberate, the trial court itself spoke with defendant, stating, "if they come back guilty, and you want a jury trial with the same jurors on the priors, we'll bring them back tomorrow and proceed. Or, if you want, you can—I'm asking you now, if you want to

---

[3]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

[4]    *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[5]    Defendant included in his brief a motion to augment the record to include the transcript of a hearing on August 16, 2012. This transcript is already included in the record.

4

make a decision, if they do come back guilty and agree, you could have a court trial on the priors. I'm not trying to encourage you to do either. I just want to know, you should talk to [defense counsel] real quickly, if they come back guilty, do you want a jury trial on those prior convictions, that's all. That's all I want to know." Defendant replied, "No. No." When the court did not hear, defendant repeated, "No, huh-uh." Defendant repeated a third time, "Huh-uh."

The court then formally informed defendant of his right to have the same jury decide whether the prosecutor proved each of the alleged prior convictions beyond a reasonable doubt in a unanimous verdict. The court asked defendant if he understood his right to a have a jury decide the issue and if he gave up that right and agreed to be tried by the court. He would still have the right to confront and cross-examine witnesses, the right to testify, and the right to call witnesses. The only difference would be that the court would decide instead of the jury. When asked if he understood and gave up his right to a jury trial, defendant replied, "Yes, sir."

The record thus demonstrates that defendant was fully informed of his right to a jury trial and expressly and personally waived that right. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1026 [as long as a defendant is competent he or she may waive trial by jury].) He cannot now complain on appeal that he was not able to testify to the jury regarding his prior conviction allegations.

## II.  Imposition of the High Terms

Citing *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*), defendant argues that the trial court imposed high terms whereas a jury has to request the high term on the record. Therefore, he should have been given midterm sentences.

In *Apprendi v. New Jersey* (2000) 530 U.S. 466, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id*. at p. 490.) In a later decision, the high court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted*

5

*by the defendant.*" (*Blakely v. Washington* (2004) 542 U.S. 296, 303.) In *Cunningham*, the court determined that, "[i]n accord with *Blakely*, . . . the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." (*Cunningham*, *supra*, 549 U.S. at p. 288.) The court concluded that California's determinate sentencing law (DSL) was unconstitutional to the extent it authorized the trial court to impose an upper term sentence based on facts that were found by the judge rather than by the jury. (*Cunningham*, at p. 292.)

In response to *Cunningham*, the California Legislature amended section 1170, subdivision (b) in 2007, to provide as follows: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (Stats. 2007, ch. 3, § 2.) Later that year, in *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*), our Supreme Court judicially adopted the amendments. (*Id*. at pp. 852-853.)

In exercising his or her discretion in selecting one of the three authorized prison terms, "the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The relevant circumstances may be obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing." (Cal. Rules of Court, rule 4.420(b).)

In the instant case, the trial court exercised its discretion as required under section 1170, subdivision (b), and *Sandoval*. *Sandoval* observed that, "[u]nder the DSL, a trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions. (See, e.g., Cal. Rules of Court, rule 4.420(c) [fact underlying an enhancement may not be used to impose the upper term unless the court strikes the enhancement]; *id*., rule 4.420(d) [fact that is an element of the crime may not be used to impose the upper term].) The court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.' [Citation.]" (*Sandoval*, *supra*, 41 Cal.4th at p. 848.) In imposing the high term, the court stated that, although the court did

6

not believe it was appropriate to sentence defendant as a "third striker," it still believed the offense in this case was "very serious" and "nasty" and called for a very serious sentence. The offense was unprovoked and was inflicted upon a 77-year-old man in a wheelchair. The court noted that defendant had elbowed Johnson in the mouth and that Williams tried to deal with defendant in a nonviolent way, but defendant was aggressive. When Williams tried to protect himself, defendant stabbed him in the arm displaying uncivilized, violent and unjustified behavior that warranted the sentence imposed. In accordance with section 1170, subdivision (b), which provides that the trial court "shall select the term which, in the court's discretion, best serves the interests of justice," and the California Rules of Court, the trial court did not err in imposing the high term.

## III. True Finding on Strike Prior and Imposition of Two-Strike Sentence

Defendant cites *People v. Thoma* (2007) 150 Cal.App.4th 1096 (*Thoma*) for the proposition that "only admissions by defendant made before the court[']s] acceptance of defendant[']s verdict/[guilty] plea in earlier prosecution may be relied upon in determining whether the prior conviction qualifies as a strike." In *Thoma*, the defendant pleaded guilty to possession of methamphetamine. (*Id*. at p. 1098.) The trial court found that Thoma had suffered a 1995 strike conviction for driving under the influence and causing bodily injury. (*Id*. at 1099.) The reviewing court held that the trial court had relied on inadmissible hearsay evidence that the defendant inflicted great bodily injury in commission of the 1995 offense. The evidence was contained in the transcript of the preliminary hearing for the 1995 offense, where a police officer testified that a nurse had told him the victim suffered several broken bones and head trauma. (*Id*. at p. 1103.) Because the nurse's statement did not fall within any exception to the hearsay rule, the testimony about it by the officer was not admissible under the former testimony exception of Evidence Code section 1291, subdivision (a). (*Thoma*, at p. 1103.) Therefore, there was insufficient evidence to support the trial court's finding that the defendant personally inflicted great bodily injury upon the victim of the prior offense within the meaning of section 1192.7, subdivision (c)(8), and that the prior offense qualified as a strike. (*Thoma*, at pp. 1099, 1104.)

7

In the instant case, part of the section 969b packet, offered as evidence of the prior convictions and testified to by the paralegal, contained an abstract of judgment showing defendant's 1992 conviction by plea for assault with a deadly weapon with an enhancement for great bodily injury. (§§ 245, subd. (a)(1), 12022.7.) The court read the abstract of judgment and stated that the enhancement was found true, but it was stricken, and no additional time was imposed. There is no indication that defendant did not admit the great bodily injury enhancement at the time he entered his plea.

Defendant's case is unlike that of *Thoma*, where the trial court gleaned the information that there was great bodily injury (making the prior offense a strike), from the transcript of a hearing where inadmissible hearsay was admitted. "In determining the truth of a prior conviction allegation, the trier of fact may look to the entire record of the conviction, but no further." (*Thoma*, *supra*, 150 Cal.App.4th at p. 1101.) *Thoma*'s holding was based on the principle that normal rules of hearsay apply to evidence admitted as part of the record of conviction, and a statement in the record of conviction that is offered to prove the truth of the matter stated must fall within an exception to the hearsay rule. (*Ibid*.) The trial court in defendant's case was entitled to rely on the abstract of judgment from the prior case. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070 [an abstract of judgment falls within Evid. Code, § 1280 because it is a "contemporaneous, statutorily sanctioned, officially prepared clerical *record*" that is "cloaked with the presumption of regularity and reliability"].)

Defendant cites *People v. Rojas* (1988) 206 Cal.App.3d 795 (*Rojas*) for the proposition that an offense underlying a defendant's prior serious felony conviction had to have occurred before commission of the current offense to subject a defendant to a strike enhancement. In *Rojas*, the defendant was charged in a one-count information with a burglary committed on July 23, 1986. In addition, he was arrested for a rape committed on July 21, 1986, two days earlier. (*Id*. at p. 797.) The defendant was tried and convicted on the rape charge on April 2, 1987, while proceedings were pending on the burglary. The People then amended the information in the burglary case to add allegations that, inter alia, Rojas had been convicted of a serious felony—the rape charge—within the

meaning of section 667, subdivision (a). (*Rojas*, at p. 797.) The court held that, to be subject to the five-year enhancement pursuant to section 667, subdivision (a), a defendant's prior serious felony conviction must have occurred before the *commission* of the present offense. (*Rojas*, at p. 802.) The court struck the enhancement. (*Ibid*.)

*Rojas* does not apply to defendant's case. His prior serious felony conviction occurred in 1992, many years before the commission of the present offenses.

## IV. Decision Not to Produce Booking Photograph

Defendant complains in his brief that a copy of his booking photograph was never introduced into evidence or shown to the court at the *Marsden* hearing. He was prejudiced because the jury would have come to a different conclusion if they had known of the photograph. It would have corroborated the independent witness's testimony that Williams was hitting defendant in the head and established self-defense. He claims that his trial counsel was defective in not showing this photograph.[6]

The trial court held a *Marsden* hearing after the verdicts were rendered. Defendant complained that his attorney did not obtain his cell phone or use his booking photo in trial to show his eye. Counsel said she obtained the cell phones to which defendant referred and had them reviewed by an independent expert and an expert with her office. The exculpatory evidence they expected to find was not on the phones. She had shown a color copy of defendant's booking photo to a number of people regarding the potential benefits of introducing it. In her opinion, it would not have been helpful to introduce it and she did not do so. The trial court stated it did not see even a colorable claim of ineffective assistance of counsel and denied the motion.

A claim that counsel was ineffective requires a showing, by a preponderance of the evidence, that counsel's performance fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's

---

[6] Defendant also claims counsel was defective in not "filing for" the self-defense jury instruction. The record shows that the trial court read CALCRIM No. 3470 on the right to self-defense or defense of another.

9

unprofessional errors, defendant would have obtained a more favorable result. (*In re Jones* (1996) 13 Cal.4th 552, 561.) In order to prevail on an ineffective assistance of counsel claim on appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission. (*People v. Majors* (1998) 18 Cal.4th 385, 403.) Defendant must overcome presumptions that counsel was effective and that the challenged action might be considered sound trial strategy. (*In re Jones*, at p. 561.) We consider counsel's overall performance throughout the case, evaluating it from counsel's perspective at the time of the challenged act or omission and in light of all the circumstances. (*People v. Bolin* (1998) 18 Cal.4th 297, 335.)

Given the evidence against defendant, we do not believe that counsel's refusal to use the booking photograph during trial prejudiced defendant to the degree that a more favorable verdict was reasonably probable had the photograph been shown. The evidence showed that defendant pulled a knife and approached Williams after they exchanged words. Williams hit defendant on the hand with his fishing cane, breaking the cane. Williams then stood and grabbed defendant by the shoulder. Defendant swung the knife toward Williams about four times and cut him on his upper arm through his jacket. Williams denied striking the first blow by hitting defendant three times on the head with his cane.

Lipsey, however, testified that Williams was sitting in his chair when he leaped out of it with a cane in his hand. Williams swung the cane down on defendant. Defendant had his hands in front of his face and the cane hit him just above the left wrist three times before the cane broke.

The jury clearly found Williams's account the more credible one. Moreover, the jury was instructed on the elements of self-defense and did not find that defendant acted in self-defense. The jury was instructed, inter alia, that the defendant acted in lawful self-defense if he used no more force than was reasonably necessary to defend against the danger. If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense. Even if the booking photograph had shown that defendant had a swollen eye, as he claimed, it is not reasonably probable that the jury would have

10

determined that cutting someone four times with a knife was reasonable force against a 77-year-old man with a cane who was sitting in a wheelchair, even if that man was able to stand up.

Moreover, counsel was clearly reluctant to show the booking photograph (which is not contained in the record) to the jury. Defendant has not overcome the presumption that counsel was effective and that the challenged act or omission might be considered sound trial strategy. Counsel vigorously cross-examined the witnesses against defendant and argued strongly for a finding of self-defense because Williams was aggressive. The trial court remarked at the *Marsden* hearing that counsel "did a very good job."

We have examined the entire record, and we are satisfied that defendant's attorney has fully complied with her responsibilities and that no arguable issues exist. (*People v. Wende* (1979) 25 Cal.3d 436, 441.)

The judgment is affirmed.